[Nos. 32832-8-I; 33750-5-I.   Division One.   April 3, 1995.]

CRISTA SENIOR COMMUNITY, *Appellant*, v. THE
DEPARTMENT OF SOCIAL AND HEALTH SERVICES,
*Respondent.*

BEVERLY ENTERPRISES-WASHINGTON, INC., *Appellant*, v.
THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES,
*Respondent.*

*Steven J. Maag,* for appellants.

*Christine O. Gregoire, Attorney General,* and *Robin Dale, Assistant,* for respondent.

WEBSTER, J. — Crista Senior Community (hereinafter Crista) and Beverly Enterprises-Washington, Inc. (hereinafter Beverly), two nursing facilities, appeal nursing services cost lids imposed on their Medicaid reimbursement rates. The facilities contend Washington State's Department of Social and Health Services (hereinafter DSHS) should compute nursing cost on an hourly basis, in addition to the patient per day and gross cost comparisons utilized. Crista also contends DSHS improperly compared nursing costs against a national medical care index (MC-CPI), rather than a regional index, when limiting Crista's nursing services cost area rate. DSHS cross-appeals against Beverly, contending the Department properly used a 4-month cost reporting period when determining Beverly's nursing facility cost rate. We affirm in part, and reverse in part.

## STATUTORY BACKGROUND

"The Medicaid program is a federal program administered by the State, under which the State of Washington and the federal government share the cost of nursing home care for Medicaid patients." *Diversified Inv. Partnership v. Depart-*

*ment of Social & Health Servs.*, 113 Wn.2d 19, 21, 775 P.2d 947 (1989). The Defendant, DSHS, is the state agency responsible for administering Medicaid. *St. Francis Extended Health Care v. Department of Social & Health Servs.*, 115 Wn.2d 690, 692, 801 P.2d 212 (1990). DSHS's administration of Medicaid is governed by Washington's Nursing Home Auditing and Cost Reimbursement Act of 1980, RCW 74.46, and accompanying regulations, WAC 388--96. "The proper interpretation of the relevant statutes and regulations is key, since they are incorporated by reference into contracts between DSHS and nursing home operators providing care under Medicaid." *Caritas Servs., Inc. v. Department of Social & Health Servs.*, 123 Wn.2d 391, 396, 869 P.2d 28 (1994).

Nursing home operators who contract with DSHS to provide nursing facility services are paid under a "prospective cost-related reimbursement system". *Caritas Servs.*, 123 Wn.2d at 397. The prospective reimbursement rate, set July 1 of each year, "is comprised of various cost components referred to as cost centers." *Cascade Vista Convalescent Ctr., Inc. v. Department of Social & Health Servs.*, 61 Wn. App. 630, 633, 812 P.2d 104 (1991). The prospective reimbursement rate is computed by determining a facility's allowable costs in each cost center for the prior calendar year, adjusting the costs for "economic conditions and trends", and subjecting costs to lids and limitations enunciated by statute. RCW 74.46.420(2); *Folden v. Washington State Dep't of Social & Health Servs.*, 744 F. Supp. 1507, 1512 (W.D. Wash. 1990), *aff'd*, 981 F.2d 1054 (9th Cir. 1992). A "settlement" process fixes the final reimbursement rate, and the operator receives the lesser of the prospective reimbursement rate or audited allowable costs. RCW 74.46.150(1).

This appeal involves the nursing services cost center reimbursement rate, a cost center which includes "all costs related to the direct provision of nursing and related care, including fringe benefits and payroll taxes for the nursing and related care personnel". RCW 74.46.481(1). The nursing services cost center reimbursement rate is subject to two lids, "a lid on the number of hours of nursing care reim-

bursed ["staffing lid"], and a lid on the rate of increase of nursing costs ["cost lid"]". *Folden*, 744 F. Supp. at 1513; RCW 74.46.481(3)-(7).

A cost lid is imposed when a facility's actual cost increase exceeds the selected nursing cost index. Former RCW 74.46.481(5), (6). In the words of the statute:

> If a facility's nursing staff level is below the limit specified in subsection (3) of this section, *the department shall determine the percentage increase for all items* included in the nursing services cost center *between the facility's most recent cost reporting period and the next prior cost reporting period.*
>
> (a) If the percentage cost increase for a facility is below the increase in the selected index for the same time period, the facility's reimbursement rate in the nursing services cost center shall equal the facility's cost from the most recent cost reporting period plus any allowance for inflation provided by legislative appropriation.
>
> (b) If the percentage cost increase for a facility exceeds the increase in the selected index, the department shall limit the cost used for setting the facility's rate in the nursing services cost area to a level reflecting the increase in the selected index.

(Italics ours.) Former RCW 74.46.481(6). In practice, DSHS starts with the "next prior cost reporting period", inflates upward by the index amount, and compares the inflated figure against the "most recent cost reporting period".

### FACTS: BEVERLY ENTERPRISES

Beverly operates four nursing facilities, Northgate Rehabilitation Center, Pinehurst Park Terrace, Evergreen Terrace, and Green River Terrace, (hereinafter Northgate, Pinehurst, Evergreen, and Green River, respectively). Beverly began operating its Northgate facility on July 1, 1984, and began operating the other three facilities on September 1, 1985. The nursing services cost reimbursement method outlined above will be demonstrated using the Northgate facility. DSHS compared the most recent cost reporting period with the next prior period using two different methods — cost by patient per day and gross cost. The determination outlined below is for the July 1, 1987, prospective rate, making 1986 the "most recent" period and 1985 the "next prior" period.

Patient Per Day Computation

Northgate's 1985 reported nursing costs were $1,015,686 for 50,342 patient days, thus $20.1757 per patient day; the MC-CPI increase was 7.6 percent, allowing an increase in patient per day costs to $21.7090. Northgate's 1986 reported nursing costs were $1,119,250 for 50,035 patient days, thus $22.3693 per patient day. Northgate's prior year patient per day nursing cost ($22.3693) exceeded its inflated next prior year cost ($21.7090). Had DSHS applied the patient per day computation, $33,038.11 would have been disallowed from Northgate's July 1, 1987, nursing cost center reimbursement rate. But DSHS also compared Northgate's costs using the gross cost method.

Gross Cost Method

The gross cost method compared Northgate's 1985 and 1986 gross nursing service costs ($1,119,250 − $1,015,686 = $103,564) against Northgate's 1985 gross costs inflated by the 7.6 percent MC-CPI ($1,015,686 × 1.076 = 1,092,878). Because the 1986 nursing costs exceeded the inflated 1985 gross costs, the nursing services center rate reimbursement was capped at $1,092,250. DSHS applied the gross cost cap to Northgate, rather than the patient per day cap, because applying the gross cost cap allowed Northgate more reimbursement. Under the gross cost computation, Northgate disallowed $26,372 from Northgate's July 1987 prospective nursing services cost center rate.

The "Short Year" Issue

Pinehurst's, Evergreen's, and Green River's 1987 reimbursement rates were computed using only the patient per day method. The gross cost method was not used because the facilities were operated by Beverly for only the last 4 months of 1985. Therefore, there were no 12-month gross cost figures available for use as "next prior cost reporting" periods in a gross cost comparison. Pinehurst's, Evergreen's, and Green River's nursing cost center reimbursement rates were capped by $115,037, $64,726, and $44,165, respectively.

Proceedings Below

Beverly contended DSHS should have computed nursing costs for Northgate, Pinehurst, and Green River on an "hourly basis" before comparing cost increases against the selected index. The administrative law judge, the review judge, and the trial court all decided DSHS was not required to compare nursing service costs using an hourly method. The administrative law judge agreed with Beverly on the "short year" issue, holding the 4-month period (September 1 — December 31, 1985) did not contain sufficient data to comprise a "prior cost reporting period" for purposes of setting July 1987 rates. The review judge reversed, finding 4 operating months constituted sufficient data upon which to compute a prior cost reporting period. The trial court held that DSHS improperly used September 1 — December 31, 1985, as a prior cost reporting period. DSHS cross-appeals the "short year" issue.

## FACTS: CRISTA

Crista operates one nursing facility. Crista's 1989 and 1990 nursing service center reimbursement rates were computed after comparing Crista's most recent and next prior costs using patient per day and gross cost methods. Crista's reimbursement was capped by $133,781 for July 1, 1989, rate setting and $162,386 for July 1990 rate setting. Crista contended DSHS should have used the hourly method and MC-CPI was less representative than a western region index. The administrative law judge held DSHS was not obligated to use the hourly method and Crista was collaterally estopped from objecting to the national index utilized by DSHS.[1] The review judge and trial court both affirmed. Crista appeals 1989 and 1990 nursing service cost center reimbursement rates, contending the hourly method is dictated by statute and DSHS should have used a western regional index, rather than MC-CPI.

---

[1]Crista was a class member in *Folden v. Washington State Dep't of Social & Health Servs.*, 744 F. Supp. 1507 (W.D. Wash. 1990), *aff'd*, 981 F.2d 1054 (9th Cir. 1992). The estoppel issue is not before this court.

## Standard of Review

The standard of review for agency proceedings which began prior to July 1, 1989, is outlined in former RCW 34.04.130, while "agency proceedings begun on or after that date" are governed by RCW 34.05.570. RCW 34.05.902 (1992). Beverly's administrative appeal was begun no later than the March 13, 1989, administrative law judge's initial decision, making former RCW 34.04.130 applicable:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> . . . .
>
> (d) affected by other error of law; or
>
> . . . .
>
> (f) arbitrary or capricious.

Former RCW 34.04.130(6)(d), (f) (1987). Crista's review began no earlier than July 18, 1989, when it requested an administrative review conference relating to its July 1989 reimbursement rate; Crista's appeal is reviewable under the current Administrative Procedure Act (APA):

> The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:
>
> . . . .
>
> (d) The agency has erroneously interpreted or applied the law; [or]
>
> . . . .
>
> (i) The order is arbitrary or capricious.

RCW 34.05.570(3)(d), (i) (1992).

■■ Although the timing of the two appeals brings two different versions of the APA into play, we will not mechanistically analyze the same issue under different standards when the standard of review and the result are so similar as to give rise to no different result. *Dana's Housekeeping, Inc. v. Department of Labor & Indus.*, 76 Wn. App. 600, 606, 886 P.2d 1147, 1151 (1995). Under both the "error of law" and the "erroneously interpreted or applied the law" standards, an agency's interpretation of the statute with whose adminis-

tration it is charged is entitled to substantial weight. *Evans v. Department of Empl. Sec.*, 72 Wn. App. 862, 865, 866 P.2d 687 (1994); *Cascade Nursing Servs., Ltd. v. Department of Empl. Sec.*, 71 Wn. App. 23, 29, 856 P.2d 421 (1993), *review denied*, 123 Wn.2d 1013 (1994). A court may, however, substitute its own judgment on the statute which the agency primarily applies and interprets. *Cascade Nursing Servs.*, at 29. Just as the standard of review relating to legal interpretation is the same under the old and new APA, the arbitrary and capricious standard does not differ. Because there is no conflict between the factual and legal review under former and current APA standards, we will apply the current APA standard of review to the "hourly rate" issue. *Dana's Housekeeping, Inc.*, at 606. The "short year" issue is governed by former RCW 34.04.130, while the index issue is reviewed under RCW 34.05.570.

## Discussion

### Whether DSHS Must Use the Hourly Method in Applying the Cost Lid

Beverly and Crista contend DSHS is statutorily required to compute nursing cost on an hourly basis (in addition to patient per day and gross cost methods) because (1) the Legislature intended the "cost lid" to control only inflationary increases; (2) the staffing lid and cost lid can be harmonized only through use of hourly comparison when determining the cost lid; and (3) the hourly method is consistent with legislative intent to control inflation. Underlying Appellant's legal argument is an undisputed fact: Appellant's patients were sicker during the "most recent cost reporting period" in relation to the "next prior cost reporting period". Just as the patient per day analysis factors out a rise in costs due to more patients, Appellants contend that the hourly method is needed to account for sicker patients, who require more nursing care.

Prior to 1980, the Medicaid act required payment to nursing homes "on a reasonable cost related basis". 42 U.S.C. § 1396a(a)(13)(E) (1976). "This standard obligated the states

to pay nursing homes for whatever reasonable costs the facilities incurred in providing care to Medicaid recipients." *Folden v. Washington State Dep't of Social & Health Servs.*, 981 F.2d 1054, 1056 (9th Cir. 1992). In 1980, Congress enacted the Boren Amendment in response to concerns about controlling continually increasing nursing home costs. The Boren Amendment required reimbursement only for costs that "must be incurred by efficiently and economically operated facilities". 981 F.2d at 1056. "The Boren Amendment was designed to give states greater flexibility in calculating reasonable costs and in containing the continuing escalation of those costs." 981 F.2d at 1056.

Washington law reflects the relaxation of federal law reimbursement requirements. Prior to 1980, prospective rates could not be lower than "the level which may reasonably be expected to reimburse *in full* for actual allowable costs under federal regulations for a nursing home which is economically and efficiently operated". (Italics ours.) Former RCW 74.09.590(1) (1979); *see also United Nursing Homes, Inc. v. McNutt*, 35 Wn. App. 632, 639, 669 P.2d 476 (1983) (DSHS must construct and implement "a system of actual cost reimbursement"). The reimbursement requirement was amended in 1983: rates were to be "reasonable and adequate to meet the costs that must be incurred by economically and efficiently operated facilities". Former RCW 74.46.420(2) (1983). Another amendment led to the establishment of "rate setting principles", which were applicable at the time all rates in this case were determined.

> (1) Reimbursement rates will be set prospectively on a per patient day basis; and
>
> (2) The rates so established will be adjusted for economic conditions and trends in accordance with appropriations made by the legislature as consistent with federal requirements for the period to be covered by such rates.

Former RCW 74.46.420(1)-(2) (1987). This legislative evolution evidences change from full to qualified reimbursement: the touchstone is federally required reimbursement, below which the State cannot fall. The change in federal law

allowed the states greater latitude, however, to implement reimbursement schemes designed to arrest runaway nursing costs. *Cascade Vista Convalescent*, 61 Wn. App. at 638.

■■ The notion of qualified reimbursement inheres in the staff and cost lids related to the nursing services cost center. The nursing services cost center reimbursement rate begins by determining "all costs related to the direct provision of nursing and related care". RCW 74.46.481(1). Appellants incorrectly contend that *reimbursement* of all costs is intended by the Legislature; the "all costs" language is only the point at which reimbursement rate analysis begins — it requires the subsequently defined lid mechanisms to be applied to the same essential cost center measure. *See Cascade Vista Convalescent*, 61 Wn. App. at 639 (the cost lid contained in RCW 74.46.481(6) is the rule, as opposed to the "all costs" language of RCW 74.46.481(1)). The Legislature intended to reimburse only the costs which would be incurred by "economically and efficiently operated facilities". The yardstick for nursing economy and efficiency is the selected index, and the enforcement mechanisms include staffing and cost lids. The staffing lid (which neither Beverly nor Crista exceeded) denies reimbursement for nursing staff levels in excess of the limit. RCW 74.46.481(4). The cost lid disallows any cost increase in excess of the selected index:

> If the percentage cost increase for a facility exceeds the increase in the selected index, the department shall limit the cost used for setting the facility's rate in the nursing services cost area to a level reflecting the increase in the selected index.

Former RCW 74.46.481(6)(b) (1987). The nursing services cost center rate reimbursement statute in no way requires DSHS to use an hourly method, as opposed to a patient per day or gross cost method. Legislative intent evidences a desire to do precisely what the statute says — limit the reimbursement rate of the facility whose costs rose more quickly than the index, regardless of whether the increases are inflationary or result from other pressures. Nor is there disharmony between staffing and cost lids, which operate separately and, under certain circumstances, were intended to

apply simultaneously. Former RCW 74.46.481(7)(b) (although DSHS has represented to another court that it applies only one cap — *see Folden*, 744 F. Supp. at 1513) (this may simply reflect a lesser cap being consumed within a greater cap).

Nursing home operators have two opportunities to address the financial impact of sicker patients, thus lessening or eliminating the impact of patient debility which might otherwise go uncompensated by operation of the cost cap. First, when rate reimbursements are set, nursing facility operators can seek adjustment for "changes in patient characteristics from the prior reporting year". Former RCW 74.46.460(2) (1987). Second, adjustments may be sought during the rate reimbursement year:

> The department, in consultation with interested parties, shall adopt rules to establish the criteria the department will use in reviewing any requests by a contractor for a prospective rate adjustment to be used to increase the number of nursing staff. These rules shall also specify the time period for submission and review of staffing requests: *Provided,* That a decision on a staffing request shall not take longer than sixty days from the date the department receives such a complete request. In establishing the criteria, the department may consider, but is not limited to, the following:
>
> (a) Increases in acuity levels of contractors' residents;

Former RCW 74.46.481(10)(a) (1987). Crista could have pursued a rate revision pursuant to WAC 388-96-774(3)(a)(i). Beverly, whose Northgate facility experienced a patient debility increase greater than 10 percent from 1985 to 1986, could have sought rate adjustment for increased acuity pursuant to then existing WAC 388-96-774(3)(a) (1983). Appellants correctly characterize the rate adjustment provision as permissive, but incorrectly argue the statutory rate adjustment provision sheds no light on whether the cost lid must utilize an hourly method. The rate adjustment provision evidences legislative intent to deny special consideration of patient debility when applying the cost lid. The existence of sicker patients does not require DSHS to use an hourly method, in part because sicker patients are otherwise addressed by statute. Appellant's contention that the cost lid unfairly impacts facilities whose patients become sicker is

nullified by the existence of the opportunity for debility compensation using a different mechanism. Judge Learned succinctly distinguished quantitative and qualitative efficiency measurements, the latter appropriately allowing exercise of discretion:

> It is for the department to determine the best way to consider the "sicker patient" factor. Unlike the "more patients" factor, there are elements of judgment and potential dispute regarding how to determine which patients in fact need more care because they are sicker.

Because nothing in the statute requires an hourly method, there was no error of law in determining reimbursement rates on a patient per day and gross cost method, and applying the more beneficial rate to nursing facilities.

Crista and Beverly also contend DSHS's refusal to use the hourly method was arbitrary and capricious because (1) the method of rates determination was inconsistent with the statute, (2) DSHS "ignored the non-inflationary variable of increased care needs of patients", and (3) DSHS did not promulgate rules designating the methods used. The rate determinations are not arbitrary and capricious because they were consistent with the statute, including the statutory method for addressing patient debility. DSHS's failure to promulgate a methodology rule is attacked on grounds that DSHS has "offered no explanation" for its selection and "[t]here is no record of the factors used". Beverly admits DSHS computed all 1987 Washington state nursing home reimbursement rates utilizing patient per day (PPD) and gross cost methods, applying the more beneficial method. No particular method is enunciated by statute, which only directs DSHS to compute the "percentage cost increase". The PPD method *is* suggested by statutory rate setting principles: "[r]eimbursement rates will be set prospectively on a per patient day basis". RCW 74.46.420(1). Implicit in Beverly's argument that a third computation, the hourly method, should be used, is an admission that the PPD and gross cost methods are reasonable, although in Petitioner's opinion they do not go far enough. DSHS's choices were exercised honestly, under cir-

cumstances capable of more than one determination. A finding of arbitrary or capricious behavior cannot be justified on this record. *Barrie v. Kitsap Cy.*, 93 Wn.2d 843, 850, 613 P.2d 1148 (1982).

### Whether DSHS Improperly Utilized MC-CPI

Crista contends DSHS committed an error of law, and acted arbitrarily and capriciously, by selecting MC-CPI, rather than MC-CPI Western Region. DSHS is required to determine and select a relevant cost increase index with which to compare facility cost increases:

> The department shall select an index of cost increase relevant to the nursing and related services cost area. In the absence of a more representative index, the department shall use the medical care component index as maintained by the United States bureau of labor statistics.

Former RCW 74.46.481(5). DSHS enacted a rule relating to the index issue:

> The test for cost increases shall compare:
>
> (a) The percentage change in allowable nursing services cost for the facility between the most recent cost report period and the next prior cost report period;
>
> (b) Against the percentage change in the medical care component of the consumer price index for all urban consumers between July of the most recent cost report period and July of the next prior cost report period.

WAC 388-96-722(4) (1987 Supp.).

█ DSHS interpreted its rule as choosing MC-CPI/National, and DSHS's reasonable interpretation is entitled to deference. *Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.*, 107 Wn.2d 427, 438, 730 P.2d 653 (1986). There is no evidence in the record which demonstrates that MC-CPI/Western is more representative than MC-CPI/National.[2] Absent such evidence, DSHS's selection is consistent with former RCW 74.46.481(5), and not affected by error of law. Because MC-CPI is designated by the statute as an appropriate index, its selection is not arbitrary and capricious.

---

[2]Judge Learned correctly pointed out that the administrative law judge's finding of representativeness was based solely on Washington's geographical inclusion within the western region.

## Whether DSHS Improperly Used a Short Year When Determining Beverly's Reimbursement Date

■ The cost lid requires comparison of "the facility's most recent cost reporting period and the next prior cost reporting period". Former RCW 74.46.481(6) (1987). Neither the statute, nor the existing regulation defined "period". "Reporting", Part A of the Nursing Home Auditing and Cost Reimbursement Act of 1980, anticipates that cost reports for contractors who cease doing business may contain data from a short or long time period:

> Not later than one hundred twenty days following the termination of a contract, the contractor shall submit to the department a cost report for the period from January 1st through the date the contract terminated.

Former RCW 74.46.040(2) (1987). Part E, rate setting, anticipates that a new contractor's rate will be established based "on a contractor's cost report including at least six months of cost data". Former RCW 74.46.450(1). DSHS is required to "analyze the submitted cost report of each contractor to determine if the information is correct, complete, and reported in conformance with generally accepted accounting principles". Former RCW 74.46.475(1) (1987). Neither statute nor rule determined how long a "cost reporting period" must be for comparison when determining the cost lid, but the statute anticipates that some cost reports may contain less than 6 months' data. RCW 74.46.040 (1987). DSHS subsequently decided to cease relying on cost reports of less than 6 months and instead enacted a specific cost lid analysis for new contractors.WAC 388-96-710(2) . The review judge held that DSHS properly compared Beverly's 4-month 1985 cost reports with Beverly's 12-month 1986 cost reports when determining, for the July 1987 reimbursement rate, whether Beverly had exceeded the cost lid. The trial court decision apparently relied on testimony which is not part of the appellate record.[3]

---

[3]The court will not consider record excerpts presented as appendices unless the excerpts have been properly designated for transmittal to the Court of Appeals or are included in the verbatim report of proceedings. *State v. Krall*, 125 Wn.2d 146, 149, 881 P.2d 1040 (1994). Because the court has record excerpts and verbatim

■ The issue is whether cost reports, for purposes of a "prior cost reporting period", must contain more than 6 months' data. Because deference to the administrative agency's interpretation of the statute is appropriate, and because the statute is capable, reasonably, of either interpretation, DSHS's decision to use a cost report containing 4 months' data was not an erroneous legal interpretation of former RCW 74.46.481(6). Because there is no evidence that the shorter cost report period was unevenly or unfairly applied, DSHS did not act arbitrarily or capriciously. DSHS's subsequent change reflects DSHS's continuing understanding that cost lids are applicable to all contractors and DSHS's attempt to refine the method by which it applies cost lids. DSHS's use of a short year for the next prior cost reporting period was proper.

CONCLUSION

DSHS is not required by statute to utilize the hourly method when computing nursing services reimbursement rates, and DSHS's refusal to use an hourly method was not arbitrary or capricious. The trial court's ruling on the methodology of computing rate reimbursement is affirmed. The trial court's ruling regarding the MC-CPI index is also affirmed. However, because 4 operating months included sufficient data upon which to compute a "next prior reporting period", the trial court is reversed on the "short year" issue. Affirmed in part, reversed in part.

COLEMAN and KENNEDY, JJ., concur.

reports, citation in the brief, rather than inclusion as an appendix, will suffice and is preferable. RAP 10.4(f), 10.3(a)(7).