[No. 24198-0-III.   Division Three.   December 19, 2006.]

S.A.H., *on the Relation of S.J.H., Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

344

*S.A.H.*, pro se.

*Robert M. McKenna, Attorney General,* and *Angela D. Coats, Assistant,* for respondent.

¶1 SCHULTHEIS, A.C.J. — Eligible Medicaid recipients under the age of 21 are entitled to early and periodic screening, diagnosis, and treatment (EPSDT) for physical and mental defects. 42 C.F.R. § 441.50. Included in this benefit is necessary assistance with transportation to and from providers. 42 C.F.R. §§ 431.53, 441.62.

¶2 S.J.H., a child with autism, is a Medicaid recipient living in Colville. The Washington Department of Social and Health Services (DSHS) provided S.H. with EPSDT assistance to attend therapy in the Tri-Cities area, including weekly travel to and from the Tri-Cities and housing there. After he received benefits for almost two years, DSHS terminated coverage, asserting that the Colville School District could provide the same treatment less expensively. His appeal was denied by the DSHS Board of Appeals (Board), which was affirmed by superior court order.

¶3 On appeal to this court, his mother, S.A.H., contends DSHS violated its federally-mandated duty to provide transportation to any necessary services under the EPSDT program. She also seeks reimbursement for increased food costs during a period before the benefits were terminated. We conclude that DSHS is required to provide medically necessary transportation to services outside a client's local community only if there is no local provider of those services. Because the Board properly ruled that DSHS was not required to transport S.H. to Richland once the neces-

sary therapy was available in Colville, we affirm. We also affirm the Board's refusal to consider Ms. H.'s request for increased meal costs because she failed to exhaust administrative remedies.

FACTS

¶4 S.H. was born in the spring of 1994 with autism. In 1996, he began attending special education classes in the Colville School District, but made little progress. The school district entered into an agreement with the H.s in 1998 to provide Applied Behavioral Analysis (ABA) therapy for S.H. in his home. ABA therapy was recommended by his doctor as particularly effective for certain autistic children.

¶5 Unfortunately, the school district did not adequately staff or oversee the ABA home therapy program, in part due to conflicts between the providers and Ms. H. In June 2000, Ms. H. withdrew S.H. from the school district, complaining that it failed to include her as a member of the education planning team and that some of the aides were not properly trained. After obtaining private therapy for her son in the Colville area for a while, Ms. H. began taking him to a private speech therapist in Kennewick in June 2001. Later, in 2002, the private therapist began providing S.H. with ABA therapy through the Richland School District.

¶6 In July 2001, Ms. H. called Allen Richards of the Medical Assistance Administration (MAA), the transportation division of DSHS. Mr. Richards monitors the contracts of providers who transport Medicaid clients to necessary services. Ms. H. requested transportation assistance to and from the Tri-Cities, including food and lodging during the week in the Tri-Cities and transportation back to Colville for the weekends. She told Mr. Richards she had to go to the Tri-Cities for her son's therapy because the Colville School District had terminated services and because he had been injured by a school district employee. The alleged injury incident occurred in March 2000, when Richard Payette, a paraprofessional working for the school district, attempted

to confine S.H. during a tantrum. As S.H. screamed and threw puzzle pieces, Mr. Payette pushed the puzzle table close to S.H.'s chair near the wall and confined him there. Ms. H. responded to S.H.'s screaming and claimed she found a bruise on his hip. She did not allow Mr. Payette to see the bruise. S.H. soon calmed down and finished the puzzle.

¶7 Mr. Richards approved Ms. H.'s request for transportation. As a result, Ms. H., S.H., and his two older siblings began a weekly schedule of riding to Richland, staying in a rented residence there during the school week, and returning to Colville every weekend.[1] DSHS spent approximately $3,000 per month for the cost of transportation, food, and lodging of the H.s in Richland. S.H. thrived in the Richland ABA program.

¶8 In March 2003, DSHS denied Ms. H.'s request for continued transportation, food, and lodging assistance. Dr. Eric Houghton of DSHS notified Ms. H. that Colville School District officials assured him they would make ABA therapy available to S.H. if she brought him back there. Because the school district could provide an "equally effective, less expensive alternative," Dr. Houghton explained, the MAA was denying payment for the cost of attending therapy in Richland. Clerk's Papers (CP) at 140. To provide the school district lead time to prepare for S.H.'s therapy, the MAA would continue to pay for transportation, food, and lodging in Richland until the end of the current school year in June 2003. In August 2003, the school district asserted it could set up an ABA program and train the required personnel within two months.

¶9 Ms. H. appealed DSHS's decision in May 2003. She argued that the Colville School District had failed before to provide proper therapy for S.H. and that a school district employee had injured her son. Stating, "I cannot and will not place my son in harm's way again" (CP at 142), Ms. H. requested continued ABA therapy in Richland, with trans-

---

[1] Ms. H.'s husband stayed in Colville because he had a job there.

portation and other necessary related services, and an increase in the daily meal assistance.

¶10 An administrative law judge (ALJ) held a telephonic hearing in September 2003. Finding that Ms. H.'s credibility was questionable, the ALJ nevertheless concluded that the ABA therapy received in Richland was medically necessary and "that the nonexistent potential Colville program cannot be an equally effective available treatment." CP at 63. DSHS's decision denying Ms. H.'s request for continued transportation, food, and lodging assistance was reversed. However, the ALJ found insufficient information in the record to support jurisdiction over the appeal of the original reduction in food assistance.

¶11 DSHS filed a petition for review of the ALJ's initial decision. On March 12, 2004, the Board entered a final order modifying the initial decision by holding that the MAA was not required to transport the H.s to Richland once ABA therapy was available for S.H. in Colville. The Stevens County Superior Court affirmed the Board on April 29, 2005, and Ms. H. timely filed a notice of appeal to this court.

STATE LIMITATION ON EPSDT SERVICES

¶12 Ms. H. contends DSHS failed to meet Medicaid requirements when it denied S.H. transportation and related services necessary for his therapy. In particular, she argues that ABA therapy—a necessary medical treatment—was not available in Colville. Consequently, she asserts, DSHS was required to provide necessary EPSDT services outside of Colville, with attendant transportation, food, and lodging services. The Board ruled that DSHS was not required to transport S.H. and his family to Richland once the necessary ABA therapy services were available in Colville.

¶13 On review of the Board order, this court applies the standards for review of an administrative decision directly to the record before the agency. *Tapper v. Employ-*

*ment Sec. Dep't,* 122 Wn.2d 397, 402, 858 P.2d 494 (1993). RCW 34.05.570 provides in part that this court may grant relief from an agency order if the order is outside the statutory authority of the agency, the agency erroneously interpreted or applied the law, or the order is not supported by substantial evidence. RCW 34.05.570(3)(b), (d), (e). The agency's interpretation of the statute it administers is entitled to substantial weight. *Crista Senior Cmty. v. Dep't of Soc. & Health Servs.,* 77 Wn. App. 398, 405-06, 892 P.2d 749 (1995). Ms. H. alleges that the Board's decision lacked evidentiary support and was unauthorized. She bears the burden of proving that the Board's action was invalid. *Campbell v. Dep't of Soc. & Health Servs.,* 150 Wn.2d 881, 892, 83 P.3d 999 (2004). Review necessarily begins with an understanding of the role Medicaid plays in providing medical services to eligible Washington children.

¶14 Medicaid is a cooperative federal and state program under which the federal government provides financial assistance to the state for medical care to needy people once the state plan meets with federal approval. 42 U.S.C. § 1396; *Indep. Acceptance Co. v. California,* 204 F.3d 1247, 1249 (9th Cir. 2000); *Cordall v. State,* 96 Wn. App. 415, 423, 980 P.2d 253 (1999). A state's participation in the program is voluntary. *Indep. Acceptance,* 204 F.3d at 1249. Once a state chooses to participate, however, it must comply with Medicaid statutes and related regulations. *Id.; Cordall,* 96 Wn. App. at 423.

■■ ¶15 In Washington, DSHS administers the Medicaid medical assistance program. RCW 74.04.050, 74.09.500. DSHS is authorized by statute to make rules and regulations consistent with the spirit and purpose of the program and to compel compliance with those rules and regulations. RCW 74.04.055, 74.08.090. These administrative rules are presumed valid and must be upheld if they are reasonably consistent with the statute. *Campbell,* 150 Wn.2d at 892.

¶16 Qualified Medicaid recipients are entitled to a minimum package of services mandated in 42 U.S.C. § 1396a.

*Mitchell v. Johnston*, 701 F.2d 337, 346 (5th Cir. 1983). Among the medical assistance services a state is required to provide is EPSDT, which includes "early and periodic screening, diagnostic, and treatment services (as defined in subsection (r) of this section) for individuals who are eligible under the plan and are under the age of 21." 42 U.S.C. § 1396d(a)(xiii)(4)(B). Subsection (r) describes specific services, including screening, vision, dental, hearing, and

> [s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan.

42 U.S.C. § 1396d(r)(5).

¶17 It is undisputed in this case that ABA therapy is a necessary treatment to correct or ameliorate S.H.'s mental condition of autism. *See* CP 8 ("ABA therapy is a type of therapy proven to be effective in working with some autistic individuals and was specifically recommended by the Appellant's doctor."). The dispute is whether S.H. is entitled to transportation and living expenses to receive treatment from a particular ABA therapist outside of his geographic region.

¶18 Transportation services under DSHS are arranged by the MAA, which provides "medically necessary transportation to and from the provider of MAA covered services that is closest and most appropriate to meet the client's medical need." Former WAC 388-546-0100 (2001) (emphasis omitted). "Medically necessary" is further defined as

> requested service which is reasonably calculated to prevent, diagnose, correct, cure, alleviate or prevent worsening of conditions in the client that endanger life, or cause suffering or pain, or result in an illness or infirmity, or threaten to cause or aggravate a handicap .... There is no other equally effective, more conservative or substantially less costly course of treatment available or suitable for the client requesting the service.

WAC 388-500-0005. The rules also provide that the MAA will cover a client's transportation to medically necessary covered services with a "local provider of type," defined as "the medical provider within the client's local community who fulfills the requirements of the medical appointment." WAC 388-546-5100, -5300(4), -5000.

¶19 Ms. H. first contends the record does not support the Board's finding that ABA therapy is available in the Colville School District. She cites the Board's conclusion that it was unclear whether such therapy was currently available locally. But the Board also noted that the school district was prepared to offer the necessary ABA therapy within two months and that the transportation services to Richland would not be terminated before the therapy was available in Colville. The order specifically provides that the MAA is not required to transport S.H. to Richland once the ABA therapy is available to him in Colville. Additionally, the Board informed Ms. H. that she could seek administrative review if the Colville School District failed to deliver the required therapy, and that she could request transportation services in the future if she discovered that ABA therapy was not actually available in Colville. Whether or not the school district had a therapy program in place at the time of the Board order, S.H. retained his right to receive the appropriate treatment. Ultimately, Ms. H. fails to show that ABA therapy will not be available to S.H. in Colville when he needs it.

¶20 Additionally, Ms. H. contends the state regulations do not comply with Medicaid requirements. Medicaid regulations state that "recipients may obtain services from any qualified Medicaid provider that undertakes to provide the services to them" (42 C.F.R. § 431.51(a)(1)) and that the state agency must provide necessary assistance with transportation if requested (42 C.F.R. §§ 431.53, 441.62). EPSDT regulations also require the state agency to "make available a variety of individual and group providers qualified and willing to provide EPSDT services." 42 C.F.R. § 441.61(b). Ms. H. contends the Richland ABA therapist is a qualified

Medicaid provider, that she is entitled to choose this therapist among the variety available, and that DSHS must provide transportation for treatment by this therapist. But the regulations do not require the state to make available a variety of providers outside a client's local community. The way providers and services are offered is left up to the state agency, as long as the agency satisfactorily meets federal requirements. *Chisholm v. Hood,* 110 F. Supp. 2d 499, 506 (E.D. La. 2000). Transportation provided for Medicaid purposes includes those expenses "determined to be necessary by the agency to secure medical examinations and treatment for a recipient." 42 C.F.R. § 440.170(a). The state plan is merely required to provide services that are sufficient in amount, duration, and scope to reasonably achieve the plan's purpose. 42 C.F.R. § 440.230(b).

¶21 As long as DSHS offers qualified providers and services for S.H. within his local community, there is no demonstrated need to offer providers outside that area. The Board ruled that DSHS (through the MAA) is not required to transport S.H. to Richland once the medically necessary ABA therapy is available to him in Colville. This ruling complies with the federal regulations that allow the state to limit transportation services to those necessary for appropriate treatment. 42 C.F.R §§ 440.170(a), 440.230(b). Ms. H. fails to show that this ruling is unsupported by the record or that it is an erroneous interpretation of valid law.

REIMBURSEMENT FOR FOOD EXPENSES

¶22 Ms. H. additionally contends the Board erred in denying her request for increased meal assistance from May 27, 2003 to June 10, 2004. In February 2003, Ms. H. received notice that her family was no longer eligible for the food subsidy. She appealed, and in a settlement agreement signed on March 4, 2003, she agreed to accept $12 per day as a food subsidy, beginning March 20. She also agreed to move to less expensive lodging in Richland. One week after Ms. H. signed the settlement agreement, DSHS denied her

request for continued transportation, food, and lodging assistance, although it agreed to pay for these expenses until the end of the school year in June.

¶23 In Ms. H.'s appeal of the agency action, she asked that the daily meal assistance be raised to the standard rate of $27.60 per day for a client and escort. The ALJ and the Board denied her request, finding that Ms. H. failed to support her request with evidence and failed to get an administrative decision from DSHS that could be timely appealed. According to the record, Ms. H. never directly and formally asked DSHS for a change in her meal assistance; she merely included the request in her appeal of the termination of her transportation assistance. Without an agency decision on her request, and the attendant record, the ALJ did not have anything to review. *See* WAC 388-02-
-0080 (options for resolving a dispute with DSHS).

¶24 Ms. H. failed to exhaust her administrative remedies. *See Dioxin/Organochlorine Ctr. v. Dep't of Ecology*, 119 Wn.2d 761, 776, 837 P.2d 1007 (1992) (a person must exhaust all administrative remedies available within the agency whose action is being challenged). Thus, the Board did not err in denying her request due to lack of jurisdiction.

¶25 Affirmed.

BROWN and KATO, JJ., concur.

Review denied at 161 Wn.2d 1025 (2007).