[No. 25863-0-I.   Division One.   May 20, 1991.]

CASCADE VISTA CONVALESCENT CENTER, INC., ET AL,
*Appellants,* v. THE DEPARTMENT OF
SOCIAL AND HEALTH SERVICES,
*Respondent.*

*John F. Sullivan, Thomas H. Grimm,* and *Inslee, Best, Doezie & Ryder, P.S.,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Gretchen Leanderson, Assistant,* for respondent.

BAKER, J.—This case involves the nursing home cost reimbursement system administered by the Department of Social and Health Services (DSHS). Two nursing homes, Evergreen Vista Convalescent Center (Evergreen) and Cascade Vista Convalescent Center (Cascade), claim that DSHS should have granted an exception to the nursing services cost lid in setting their July 1, 1985, reimbursement rates.[1] The agency's action was upheld by an administrative law judge, and was affirmed in a DSHS review decision. The Superior Court affirmed the review decision.

## I
### FACTS
### Statutory and Regulatory Background

Evergreen and Cascade are nursing homes located in Kirkland and Redmond, Washington, respectively. Both facilities contract with DSHS to provide residential nursing services to recipients of federally aided medical assistance under Title XIX of the Social Security Act, commonly known as the Medicaid program. *See* 42 U.S.C. §§ 1396, 1396a. The 1980 Boren Amendment to the Medicaid act imposes a binding obligation on states to adopt rates that are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities. *Wilder v. Virginia Hosp. Ass'n,* ___ U.S. ___, 110 L. Ed. 2d 455, 110 S. Ct. 2510, 2517–19 (1990). DSHS reimburses the facilities for the services they provide pursuant to a system set forth in RCW 74.46 and WAC 388–96. The reimbursement statutes and regulations require DSHS to prospectively set rates for each facility on July 1 based on a cost report submitted by the facility. RCW 74.46.460, .475.

---

[1]The parties have also stipulated to a consolidation of this appeal with an administrative appeal of their July 1, 1986, rates.

A facility's reimbursement rate is comprised of various cost components referred to as cost centers.[2] RCW 74.46-.470. At issue here is the nursing services cost center which "shall include all costs related to the direct provision of nursing and related care, including fringe benefits and payroll taxes for the nursing and related care personnel." RCW 74.46.481(1). "The nursing services cost area reimbursement rate will reimburse for the necessary and ordinary costs of providing routine nursing and related care to recipients." Former WAC 388–96–722(1) (amended 1986, 1987, 1988).

The nursing services cost center rates are tested for reasonableness and adjusted for inflation. RCW 74.46.481(4), (5), (7); RCW 74.46.495. They are subject to two reasonableness tests:

(a) A test for nursing staff hours; and
(b) A test for cost increases between the current and preceding report period.

WAC 388–96–722(2).[3] Evergreen and Cascade contest DSHS's application of the second test, commonly referred to as the nursing services cost lid. The nursing services cost lid is described by statute as follows:

If the percentage cost increase for a facility exceeds the increase in the selected index, the department *shall* limit the cost used for setting the facility's rate in the nursing services cost area to a level reflecting the increase in the selected index.

(Italics ours.) RCW 74.46.481(6)(b). The implementing regulation, former WAC 388–96–722(2)(b)(ii) (amended 1986, 1987, 1988), provided:

The test for cost increases shall compare the percentage change between the most recent cost report period and the next prior cost report period allowable nursing service costs for the facility against the percentage change between July of the most recent cost report period and July of the next prior cost

---

[2]There is also an allowance for return on investment, *St. Francis Extended Health Care v. Department of Social & Health Servs.*, 115 Wn.2d 690, 696, 801 P.2d 212 (1990); RCW 74.46.530. *St. Francis* referred to this allowance as an additional cost center.

[3]This language has not been amended.

report period medical care component of the consumer price index for urban consumers nationwide. . . . If a facility is affected by this limit due to special or unusual circumstances, such as a decrease in patient days, the department *may* grant an exception or partial exception to the limit.

(Italics ours.)[4] For example, in the present case, in determining the facilities' July 1, 1985, reimbursement rates, DSHS measured cost increases between 1983 and 1984. The percentage of increase was then compared to the medical care component of the consumer price index for that period, which was 6.3 percent.[5] Any increases greater than 6.3 percent were disallowed, since DSHS granted no exceptions.[6]

Cascade's nursing costs increased 9.7 percent between 1983 and 1984, and Evergreen's nursing costs increased 9.2 percent for the same time period. Thus, the Department disallowed that portion of the facilities' cost increases over 6.3 percent, which amounted to $33,367 of Cascade's reported 1984 costs[7] and $25,032 of Evergreen's 1984 reported costs.

The parties do not dispute the following facts that comprise the circumstances Cascade and Evergreen allege were sufficiently "special or unusual" that they should have been allowed an exception to the cost lid pursuant to former WAC 388–96–722(2)(b)(ii).

---

[4]Note that the regulation, unlike the statute, authorized DSHS to make exceptions to the cost limitations.

[5]Reliance on the medical care component of the consumer price index is authorized by statute. RCW 74.46.481(5).

[6]If the percentage of cost increase reported by a facility is greater than the index, DSHS reduces the cost base upon which the nursing rate is calculated to the level of costs incurred during the second prior calendar year (here, 1983) plus the allowable index rate of increase between the 2 calendar years (here, 1983 and 1984).

[7]The administrative law judge modified Cascade's disallowance figure to $32,890, which was upheld by the review judge.

Cascade Vista

1. Added Staff. On September 8, 1983, DSHS sent a letter to Cascade identifying it as a "low–staffed" home and stating that it was eligible for a rate increase that would pay to employ up to 14 full time equivalent (FTE) patient care staff. The letter stated that staffing proposals should be submitted to DSHS by October 15, 1983. No staffing proposal was ever submitted, but Cascade did in fact increase its staffing. The Director of Nursing Services testified that she responded to the letter by adding one FTE licensed practical nurse to each shift.[8]

2. Higher Debility Scores. Cascade's patients became more debilitated in 1984. The debility score of Cascade's patients, as determined by the Battelle Patient Debility Score Chart, increased 6.2 percent, from 2.74 in 1983 to 2.91 in 1984. The debility score is a measure of the acuity level of a patient, which in turn determines the care needs. Cascade's patient debility scores ranked third highest out of the state's 265 nursing homes in 1984.

3. Legislatively Mandated Payroll Taxes. Finally, Cascade's payroll taxes and industrial insurance premiums increased by approximately 22 percent between 1983 and 1984. These increases were mandated by the Legislature and were not subject to Cascade's control.

Evergreen Vista

1. Higher Debility Scores. Evergreen's patient debility scores increased by 13.6 percent from 2.43 in 1983 to 2.76 in 1984. Evergreen's patient debility scores ranked ninth highest out of the state's 265 nursing homes in 1984. Evergreen had an unusual number of Alzheimer's patients. In the opinion of the Director of Nursing Services at Evergreen, the Battelle Debility Score does not truly reflect the increased amount of care Alzheimer's patients need. She testified that they can be combative, and have memory loss,

---

[8] Spreadsheets prepared by Cascade's accountant show that Cascade added 1.2 FTE registered nurse or licensed practical nurse positions.

poor judgment, and wandering behavior.[9] As a result, Evergreen had to increase its staffing.[10]

2. <u>Contract Labor Costs</u>. Evergreen experienced difficulty hiring nursing aides in 1984 due to its location in a developing area of medical complexes and shopping centers, which competed with Evergreen for employees. As a result, Evergreen was forced to hire aides through contract labor pools at a higher cost.

3. <u>Legislatively Mandated Payroll Taxes</u>. Evergreen experienced a 14.6 percent increase between 1983 and 1984 in legislatively mandated payroll taxes.

Rulings Below

The review judge held that the facilities' circumstances were not "special or unusual" within the meaning of former WAC 388–96–722(2)(b)(ii). The facilities petitioned for review to King County Superior Court. The court affirmed the review decision, holding that it was not affected by error of law. The court further held that a decision to grant an exception to the nursing services cost lid was within

---

[9]The Battelle profile does, however, include ratings for physical and verbal abusiveness, disorientation, forgetfulness, and wandering.

[10]Neither Cascade's nor Evergreen's Director of Nursing Services requested "exceptional care" rates for their patients. RCW 74.46.481(9) and the former and current versions of WAC 388–96–763 (amended 1988, 1990) establish a method by which a facility may apply for an individual prospective reimbursement rate for a patient whose special care needs satisfy certain requirements. The Director at Evergreen testified she did not apply for any exceptional care rates because she thought the necessary care was being provided and she was trying to stay within her budget. The review judge cited WAC 388–96–763 and speculated that the appellants may not have applied "due to certain limitations in connection with such rates."

Further, former WAC 388–96–773 (repealed 1990) and –774 (amended 1987, 1988, 1990) provided for an adjustment in prospective rates when a facility's average debility score increases by a rate of 10 percent or more, as in Evergreen's case, or when changes in staffing levels are required by DSHS, as in Cascade's case. *See* former WAC 388–96–773(2)(a), (b); former WAC 388–96–774(3)(a), (c). It is unclear why the facilities did not apply for such adjustments. Former WAC 388–96–774, filed in August of 1985, was newly in place at the time of the December 1985 desk review.

DSHS's discretion, and that DSHS did not abuse its discretion.

## II
### STANDARD OF REVIEW

The standards of review governing administrative decisions are set forth in former RCW 34.04.130(6),[11] which provides that a reviewing court may reverse an administrative decision if it is:

(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or
(f) arbitrary or capricious.

██ "Interpretation of a statute governing reimbursement rates and the regulations implementing same is purely a question of law". *St. Francis Extended Health Care v. Department of Social & Health Servs.*, 115 Wn.2d 690, 695, 801 P.2d 212 (1990). We review issues of law under the error of law standard, which allows the reviewing court to substitute its judgment for that of the administrative body, though substantial weight is accorded the agency's view of the law that falls within its expertise. *St. Francis.*

## III
### APPLICATION OF COST LID

In construing this state's prior regulatory scheme,[12] this court held that Congress intended the states to set rates at a "'reasonable' level" and "to reimburse nursing homes in full for reasonable costs actually incurred." *United Nursing*

---

[11]RCW 34.04.130 has been repealed and superseded but continues to govern agency proceedings begun before July 1, 1989. RCW 34.05.902.

[12]RCW 74.46 was enacted by Laws of 1980, ch. 177, and has been subsequently amended. *See United Nursing Homes, Inc. v. McNutt*, 35 Wn. App. 632, 637 n.4, 669 P.2d 476, *review denied*, 100 Wn.2d 1030 (1983); RCW 74.46.

*Homes, Inc. v. McNutt,* 35 Wn. App. 632, 636, 669 P.2d 476, *review denied,* 100 Wn.2d 1030 (1983). The *McNutt* court went on to hold that it was inherent in our State Legislature's enactment of RCW 74.46 that reimbursement rates should be adequate to reimburse "in full the actual, allowable costs of a facility which is economically and efficiently operated" and "take into account economic conditions and trends". *McNutt,* 35 Wn. App. at 637 n.4 (citing former RCW 74.46.420).

However, RCW 74.46.420 was amended to delete reference to the language regarding reimbursement "in full". Laws of 1983, 1st Ex. Sess., ch. 67, § 18; Laws of 1985, ch. 361, § 18. Moreover, *McNutt* was decided prior to the Boren Amendment, which does not require full reimbursement of costs. *Folden v. Department of Social & Health Servs.,* 744 F. Supp. 1507, 1531 (W.D. Wash. 1990). There is no pertinent judicial interpretation of RCW 74.46.481 (establishing the nursing services cost lid), or its implementing regulation, former WAC 388–96–722(2)(b)(ii) (setting forth the special or unusual circumstances exception).

■ Instead, we are left with a few simple principles of statutory construction. RCW 74.46.481(6)(b) states that "the department shall limit the cost used" in setting prospective rates to levels reflecting the increase in the inflationary index. The word "shall" is presumptively imperative and operates to create a duty rather than conferring discretion. *State v. Bartholomew,* 104 Wn.2d 844, 848, 710 P.2d 196 (1985). Only where contrary legislative intent is shown will "shall" be interpreted as directory rather than mandatory. *State v. Bartholomew, supra.*

■ The facilities, on the other hand, view RCW 74.46-.481(1) as containing the relevant mandatory language (nursing services cost center "shall include all costs related to the direct provision of nursing and related care").[13] They

---

[13]We note that the reference to "all costs" in RCW 74.46.481(1) is reminiscent of the reimbursement "in full" language of *McNutt,* which was apparently rejected by the Legislature, as explained above.

regard this subsection as the general rule, and argue that we should strictly construe the lid in RCW 74.46.481(6)(b) as an exception to the general rule. We disagree, and adopt the Department's view that the lid in RCW 74.46.481(6)(b) is the rule and the exception allowed under former WAC 388–96–722(2)(b)(ii) should be narrowly construed.

■ With regard to the added staff, contract labor costs, and high debility scores, we agree with the review judge's holding that these circumstances pertained

> to an alleged need to exceed the limit on nursing staff established pursuant to RCW 74.46.481(3) and (4) and the level of nursing staff hours referred to in WAC 388–96–722(2)(a) and (b)(i). There is no exception "due to special or unusual circumstances" that permits exceeding the nursing staff level. The exception in WAC 388–96–722(2)(b)(ii) permitting an exception is only applicable to the cost increase limit or lid.

With regard to the increase in payroll taxes, counsel for the facilities acknowledged at oral argument they had achieved some relief on this issue in another case. In any event, we again concur with the Department that this did not constitute a "special or unusual" circumstance justifying an exception to the cost lid.

In sum, the reasoning of the review judge comports with the statutory mandate to limit costs to levels reflecting the increase in the inflationary index, and the review judge was correct to narrowly construe any exceptions to that limitation. The agency's construction of the statutes and regulations accords with our view of the law. We find no error in the review decision, and we therefore affirm.

COLEMAN and FORREST, JJ., concur.