919 P.2d 602 (1996)
82 Wash.App. 495
SEATOMA CONVALESCENT CENTER, a Washington corporation, Appellant,
v.
The DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Respondent.
COLBY MANOR, INC., a Washington corporation; Moderncare West Seattle, Inc., a Washington corporation; and Pinecrest Manor Convalescent Home, Inc., a Washington corporation, Appellants,
v.
The DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Respondent.
Branch Villa Health Care Center, Inc., et al., Appellants,
The Department of Social and Health Services, Respondent.
KLR ASSOCIATES, INC., et al., Appellants,
v.
The DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Respondent.
Nos. 17822-2-II, 17668-8-II and 17871-1-II.
Court of Appeals of Washington, Division 2.
April 12, 1996.
Publication Ordered June 7, 1996.
As Amended on Denial of Reconsideration July 19, 1996.
*604 Robin Dale, Asst. Atty. Gen., Lacey, for Respondent.
John Francis Sullivan, Thomas Huber Grimm, Inslee Best Doezie & Ryder PS, Bellevue, for Appellants. *603
*605 HOUGHTON, Acting Chief Judge.
In a consolidated appeal of three cases involving numerous nursing facilities,[1] Seatoma and KLR challenge the Department of Social and Health Services' (DSHS) administrative determination of their Medicaid reimbursement rates in the nursing services and administration and operations cost centers. They argue that DSHS was required to reimburse the facilities for all of the necessary and ordinary expenses that were not expressly unallowable. DSHS cross-appeals the trial court's rulings in KLR and Branch Villa that DSHS must adopt an additional method to determine the cost increase lid for the nursing services cost center.[2] We affirm the trial court rulings on the reimbursement of the nursing services and the administration and operations cost centers. We reverse the trial court's ruling that DSHS must adopt an additional methodology to measure the nursing services cost lid.

STATUTORY BACKGROUND
Medicaid is a federal program, under which the state and federal governments share the cost of providing nursing home care for low income individuals. Crista Senior Community v. Department of Social & Health Servs., 77 Wash.App. 398, 400-401, 892 P.2d 749 (1995) (citing Diversified Inv. Partnership v. Department of Social & Health Servs., 113 Wash.2d 19, 21, 775 P.2d 947 (1989)). Under this joint program, the federal government delegates authority to the states to administer Medicaid and to devise their own reimbursement systems, provided the systems comply with certain federal guidelines. Title XIX of the Social Security Act, codified at 42 U.S.C. 1396a, et seq.
In 1980, the Boren Amendment changed these guidelines to allow the states greater authority to control the continuing increase in nursing home costs. Folden v. Washington State Dep't of Social & Health Servs., 981 F.2d 1054, 1056 (9th Cir., 1992)(additional citation omitted); see also 42 U.S.C. § 1396a(a)(13)(A) (1988). The Boren Amendment allowed the states to limit reimbursement from "all reasonable costs to only those costs that `must be incurred by efficiently and economically operated facilities' to provide the care that is required under federal and state quality standards." Folden, 981 F.2d at 1056. This change was designed to encourage providers to contain their costs and allow states greater flexibility to accommodate the reduction in federal Medicaid funds. Folden, 981 F.2d at 1056.
Furthermore, "[t]he Boren Amendment allows the states to adopt a `prospective' rate-setting system, which sets out a predetermined rate that the provider will receive and, thus, encourages the provider to meet that rate or to absorb the loss if the provider's actual costs exceed that rate." Folden, 981 F.2d at 1056. Thus, the states have a great deal of flexibility in choosing the methods for computing rates, provided that the rates meet the federal requirements that they are both reasonable and adequate. Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990).
All the facilities in this appeal are Medicaid certified, skilled nursing facilities in *606 Washington. DSHS pays these facilities to provide care to Medicaid recipients pursuant to RCW 74.46, Washington's Nursing Home Auditing and Cost Reimbursement Act of 1980, and the implementing regulations, WAC 388-96. Crista, 77 Wash.App. at 401, 892 P.2d 749. The statute and regulations are incorporated into all contracts between DSHS and the facilities. Crista, 77 Wash. App. at 401, 892 P.2d 749 (citing Caritas Servs., Inc. v. Department of Social & Health Servs., 123 Wash.2d 391, 396, 869 P.2d 28 (1994)).
As allowed by the Boren Amendment, Washington has adopted a "`prospective cost-related reimbursement system,'" (Crista, 77 Wash.App. at 401, 892 P.2d 749 (quoting Caritas, 123 Wash.2d at 397, 869 P.2d 28)), which is set July 1st each year and "`is comprised of various cost components referred to as cost centers.'" Crista, 77 Wash. App. at 401, 892 P.2d 749 (quoting Cascade Vista Convalescent Ctr., Inc. v. Department of Social & Health Servs., 61 Wash.App. 630, 633, 812 P.2d 104 (1991)); former RCW 74.46.420,[3] 460(1),[4].470.[5] The prospective rate is determined by calculating a facility's allowable costs in each cost center for the prior calendar year, adjusting for the legislatively set economic conditions and trends, and applying the cost lids and limitations in the statute. Former RCW 74.46.420(2);[6]Folden v. Washington State Dep't of Social & Health Servs., 744 F.Supp. 1507, 1512 (W.D.Wash., 1990), aff'd, 981 F.2d 1054 (9th Cir.1992).
The facilities challenge DSHS's application of the reimbursement statute, arguing that DSHS erred by failing to reimburse all "necessary and ordinary" nursing services and administration and operations expenses; in applying the inflation adjustment factor to these cost centers; and in failing to account for actual staffing levels in 1990 (Seatoma & KLR). DSHS appeals, arguing that it is not required to use the facilities' proposed "hourly cost" method in calculating the nursing services cost increase lids (Branch Villa & KLR).
The nursing services cost center includes "all costs related to the direct provision of nursing and related care, including fringe benefits and payroll taxes for the nursing and related care personnel." Former RCW 74.46.481(1) (1989), Laws of 1987, ch. 476, § 5. This cost center is subject to two lids: (1) a lid on the number of hours of nursing care reimbursed ("staffing lid"), taking into account patient characteristics (former RCW 74.46.481(3)); and (2) a lid on the rate of increase of nursing costs ("cost lid")(former RCW 74.46.481(5)). Crista, 77 Wash.App. at 401-02, 892 P.2d 749 (citing Folden, 744 F.Supp. at 1513).
The "staffing lid" is always applied; the "cost lid" is applied when the facility's cost increase exceeds the nursing cost index used by DSHS. Crista, 77 Wash.App. at 402, 892 P.2d 749 (citing former RCW 74.46.481(5), (6)). Pursuant to former RCW 74.46.481(6):
If a facility's nursing staff level is below the limit specified in subsection (3) of this section, [DSHS] shall determine the percentage increase for all items included in the nursing services cost center between the facility's most recent cost reporting period and the next prior cost reporting period.
(a) If the percentage cost increase for a facility is below the increase in the selected index for the same time period, the facility's *607 reimbursement rate in the nursing services cost center shall equal the facility's cost from the most recent cost reporting period plus any allowance for inflation provided by legislative appropriation.
(b) If the percentage cost increase for a facility exceeds the increase in the selected index, [DSHS] shall limit the cost used for setting the facility's rate in the nursing services cost area to a level reflecting the increase in the selected index.
Pursuant to former RCW 74.46.481(7):
If a facility's nursing staff level exceeds the reasonableness limit established in subsection (3) of this section, [DSHS] shall determine the increase for all items included in the nursing services cost center between the facility's most recent cost reporting period and the next prior cost reporting period.
(a) If the percentage cost increase for a facility is below the increase in the index selected pursuant to subsection (5) of this section, the facility's reimbursement rate in the nursing cost center shall equal the facility's cost from the most recent cost reporting period adjusted downward to reflect the limit on nursing staff, plus any allowance for inflation provided by legislative appropriation subject to the provisions of subsection (4) of this section.
(b) If the percentage cost increase for a facility exceeds the increase in the selected index, [DSHS] shall limit the cost used for setting the facility's rate in the nursing services cost center to a level reflecting the nursing staff limit and the cost increase limit, subject to the provisions of subsection (4) of this section, plus any allowance for inflation provided by legislative appropriation.
In fact, DSHS begins "with the `next prior cost reporting period,' inflates upward by the index amount, and compares the inflated figure with the `most recent cost reporting period.' "Crista, 77 Wash.App. at 402, 892 P.2d 749 (quoting former RCW 74.46.481(6)). The inflation adjustment factor applied to the nursing services cost center is determined by the Legislature in the biennial budget act, and is applied to a prior period rate when that prior period rate forms the basis for the next period rate. Former RCW 74.46.495 (1989), Laws of 1983, 1st ex. sess., ch. 67, § 26.
The administration and operations cost center includes "all items not included in the cost centers of nursing services, food, and property." Former RCW 74.46.500(1)(1989), Laws of 1980, ch. 177, § 50. The administration and operations costs are capped at the 85th percentile of the rates for all reporting facilities. Former RCW 74.46.500(2).

FACTS & PROCEDURAL HISTORY
During the administrative hearings, several Administrative Law Judges (ALJs) made findings of fact based upon the parties' stipulation. The findings were largely adopted by the Administrative Review Judges (ARJs).[7] The facilities did not challenge these findings of fact before the superior court. Nor do the facilities dispute the findings in this appeal; therefore, we accept them as verities. St. Francis Extended Health Care v. Department of Social & Health Servs., 115 Wash.2d 690, 691, 801 P.2d 212 (1990).
The following facts are divided into three sections based upon the case names of the unconsolidated appeals: Seatoma, Branch Villa, and KLR.

A. Seatoma (July 1, 1990 rate)

1. Seatoma Convalescent Center
Seatoma requested administrative review of DSHS's determination of its July 1, 1990 Medicaid reimbursement rate. An ALJ upheld DSHS's rate determination in its initial decision filed on July 7, 1992, which was affirmed by the ARJ. Seatoma appealed both the ALJ's initial decision and the ARJ's review decision. The ALJ based her decision on the stipulated facts and statement of issues dated January 20, 1992; the affidavit of Kris Bolt dated February 11, 1992; the supplemental declaration of Kris Bolt dated February *608 25, 1992; Seatoma's memoranda; and DSHS's memoranda.
The ARJ considered the entire record before the ALJ and adopted ALJ's findings of fact. The ARJ concluded that former RCW 74.46.430(1)(1989), Laws of 1987, 2nd ex. sess., ch. 1, § 2, provides that the prospective reimbursement rate is the maximum reimbursement rate. The ARJ also concluded that costs in excess of the nursing services staff and costs lids need not be reimbursed, even if they are ordinary, necessary, and allowable. Additionally, the ARJ concluded that, because of the required limitations and lids, all of the necessary, ordinary, and allowable costs are not necessarily reimbursed.
The ARJ then concluded that while the prospective rates may be adjusted to reflect the economic trends and conditions, any adjustment must be made in accordance with the legislative appropriations; i.e., those appropriations in effect at the time the rate is set. Finally, the ARJ concluded that the inflation increase in the most recent six months is not considered in the inflation adjustment factor adjustment. The ARJ incorporated the ALJ's other conclusions by reference.
Seatoma appealed to the superior court pursuant to RCW 34.05.510, challenging the ARJ's decision denying Seatoma's reimbursement rate appeal. Seatoma appealed the July 1, 1990 rates set by DSHS, arguing the rates were insufficient to meet its costs for hands-on nursing care and administration and operations.

2. Colby Manor, Moderncare & Pinecrest
Colby Manor: The ALJ's initial order was reviewed by the ARJ, who adopted the ALJ's findings of fact. The ARJ concluded that DSHS was required to determine and pay the prospective reimbursement rates, adjusted by the inflation adjustment factor or authorized cost increases, not necessarily all allowable costs.
Moderncare: The ALJ's initial order was reviewed by the ARJ, who adopted all but the last sentence of findings 2 and 4, which he held to be conclusions of law. As in Colby Manor, the ARJ concluded that DSHS was not required to reimburse all allowable costs and upheld DSHS's method of determining the prospective rate.
Pinecrest Manor: The ALJ's initial order was reviewed by the ARJ, who adopted the ALJ's findings of fact. As with the prior cases, the ARJ upheld DSHS's determination of the reimbursement rates.
These three facilities appeal DSHS's July 1, 1990 rate setting in the nursing services and administration and operations cost centers and its application of the inflation adjustment factor for the period between July 1, 1990 and June 30, 1991. The trial court consolidated Seatoma's appeal with those of Colby Manor, Moderncare, and Pinecrest.

3. The Consolidated Trial Court Appeal
The trial court rendered an oral decision on October 22, 1993, upholding DSHS's administrative rulings. Seatoma then filed a motion for reconsideration, which apparently was denied. The trial court entered a judgment in favor of DSHS on December 9, 1993, attaching its memorandum decision in the related case, KLR.
B. Branch Villa (July 1, 1989 rate)
Branch Villa appealed DSHS's determination of the July 1, 1989, nursing services cost growth lid (Code 25 adjustment[8]), which DSHS applied to Branch Villa's reimbursement rates. DSHS argued that the ALJ must decide whether DSHS correctly allocated the enhancement costs between nursing services and administration and operations for calculating the nursing services cost growth lid.[9] The ALJ considered the testimony of Mario Martini, a consultant to the facilities, and Paul Montgomery, a DSHS rate representative. After the ALJ ruled in *609 favor of Branch Villa, DSHS appealed. The ARJ then overturned the ALJ's decision. The ARJ adopted the ALJ's findings of fact, but with several clerical changes and the unchallenged addition of the statement "`[r]ate revisions granted under [former] WAC 388-96-774 [1990] are exempted from the nursing services cost growth lid test before it is applied to nursing services costs.'"
At issue in Branch Villa is whether, in addition to the gross costs and per patient day rate, DSHS must use an additional methodology in calculating the nursing services cost increase lid. The ARJ concluded that, because the medical care component of the consumer price index (MC-CPI) was implemented by former WAC 388-96-722(4)(b) (1990), she had no authority to address whether any other index was preferable under the rule. The ARJ concluded that prior ALJ and ARJ decisions had consistently ruled that the "hourly rate" approach proposed by Branch Villa was "not authorized by the rules."
In addressing Branch Villa's "hourly cost" method, the ARJ concluded:
The hourly rate proposed and devised by [Branch Villa] includes additional refinements and features claimed to make it more representative of the costs wished to be claimed by [Branch Villa]. In approving use of this rate, the ALJ chiefly relies on a comparison to the cost increases that are included in computing the [MC-CPI] and concludes that these costs are more similar to those measured by the hourly cost method.... Neither the rule nor the statute state that the similar costs are only to be compared. The use of the [MC-CPI] is simply an index to ascertain the amount of inflation industry-wide in medical care in order to determine whether a particular facility's cost increase is out of line with the average. The increases in costs, incurred on whatever basis, are to be limited under [DSHS] rules to the increase in this version of the CPI to reflect inflation. The ALJ's interpretation of legislative intent by requiring use of this index if a more representative one is not found is conjecture and may be logical[,] but is not supported by any evidence in the record....
There has been no showing that the legislature has directed that the increased costs to be compared are limited by the index selected. If this index is found to not be an appropriate measure in setting a lid, the avenue would be for [DSHS] to change the index, not to permit an inconsistent change in the way rates are computed unless an additional method is found advisable and added to the rules.
(Emphasis ours). The ARJ also concluded that former WAC 388-96-774 (1990) addresses "qualitative increases in nursing care outside of the lidding process" by permitting increases in current funding when additional nursing services are needed. "The quantitative increases should already be considered in the PPD [per patient day] rate computation because the cost of nursing services expended per each day of patient care would increase as the hours do. An increase in the need for care would increase the amount that is spent per patient day." The ARJ noted that Branch Villa's proposed "hourly rate" scheme appears to fail because it lacks a relation to the number of patients in the facility and could permit hiring in excess of that needed to care for the patients.
Branch Villa petitioned for judicial review of the ARJ's decision. The trial court reversed the ARJ and remanded the case to DSHS to institute rulemaking proceedings to create a new method for measuring cost increases. DSHS moved for reconsideration, which was denied, and the trial court entered a judgment in favor of Branch Villa.
C. KLR (July 1, 1990 rates)
KLR appealed the final administrative determination of its July 1, 1990 Medicaid nursing home reimbursement rates, appending the ALJ's initial decision and the ARJ's review decision. KLR argued that the rates set by DSHS "were insufficient to meet its necessary and ordinary costs of providing direct, hands-on nursing care" and its "necessary and ordinary administrative costs that are to be reimbursed in the [administration and operations] cost center."
The KLR facilities stipulated to the consolidation of their cases before the superior *610 court.[10] These facilities consolidated three legal questions for appeal: how to calculate and apply (1) the nursing services cost increase lid (Code 25); (2) the inflation adjustment factor; and (3) the necessary and ordinary expenses under the nursing services and administration and operations cost centers.
The trial court issued a memorandum decision, upholding the ARJ's determination of the inflation adjustment factor and necessary and ordinary cost reimbursement, and reversing the ALJ/ARJ's determination on the nursing services cost growth lid, based upon its reasoning in Branch Villa. Additionally, the trial court remanded the Crestwood case for recalculation using the MC-CPI Western Regional Index. The trial court filed its judgment on December 3, 1993.
D. Procedure on Appeal.
Seatoma challenges DSHS's determination of its July 1, 1990, reimbursement rates in the nursing services and administration and operations cost centers applicable to the period between July 1, 1990 and June 30, 1991. It also seeks a rate revision to reflect actual staffing levels covered under the 1990 rate.
In the Branch Villa case, DSHS appealed and requested reinstatement of the ARJ's determination that DSHS need not use the "hourly cost" method. DSHS moved to stay enforcement of the trial court's judgment pending the outcome of this appeal. This court granted a stay of enforcement pending the outcome of this appeal.
In KLR, both parties appealed the trial court decision. KLR challenges DSHS's determination of its July 1, 1990 reimbursement rates in the nursing services and administration and operations cost centers. DSHS appeals the trial court's ruling that DSHS calculate the nursing services cost lid using the "hourly cost" method.
DSHS moved to consolidate the Seatoma and KLR appeals. KLR moved to stay its appeal pending the outcome of the Seatoma and Branch Villa decisions. This court denied the motion, and consolidated all of these cases. This court also denied the parties' stipulation to bifurcate and transfer part of the KLR appeal to Division I.

ANALYSIS
A. Standard of Review
Review of administrative decisions is governed by Washington's Administrative Procedures Act (APA), RCW 34.05. This court applies the APA standards directly to the record before the agency. Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993). Pursuant to RCW 34.05.570(3), a reviewing court may reverse an agency order when "(d) [t]he agency has erroneously interpreted or applied the law;.... or (i)[t]he order is arbitrary or capricious."[11]
The interpretation of a statute and regulations governing the reimbursement rates for nursing facilities is "purely a question of law." St. Francis, 115 Wash.2d at 695, 801 P.2d 212; Cascade Vista, 61 Wash.App. at 637, 812 P.2d 104. Issues of law are reviewed under the error of law standard, allowing the reviewing court to substitute its judgment for that of the administrative agency, while according substantial weight to the agency's view of the law within its expertise. St. Francis, 115 Wash.2d at 695, 801 P.2d 212.
B. Seatoma/KLR: Nursing Services and Administration and Operations Cost Center Challenge
Seatoma and KLR make a two-prong argument: (1) first, that former WAC 388-96-722(1)(1990) requires DSHS to reimburse a facility for all of its necessary and ordinary costs; and (2) second, that the Boren amendment requires DSHS's reimbursement rates to be reasonable and adequate to meet the costs of an efficiently and economically run facility. The first issue is properly before this court; the second is not.

*611 1. The Boren Amendment Issue

Each of the facilities in the Seatoma appeal stipulated before the ALJ to reserve challenges based upon the Boren Amendment for later appeal. In the KLR appeal, the Bremerton ALJ dismissed the Boren challenge; the Regency ALJ declined to address the Boren challenge as being beyond her scope of authority; the Forest Ridge ALJ also refused to reach the Boren challenge; in Evergreen/Cascade the parties stipulated to reserve the Boren challenge; in Crestwood the parties reserved the Boren challenge; and the Hillhaven ALJ did not address the Boren issue.
As DSHS argues, the facilities' challenge to the sufficiency of the DSHS reimbursement scheme under the Boren Amendment should not be decided by this court. The Boren challenge was neither heard, nor decided, by the ALJs or the ARJs. This court reviews administrative decisions based solely on the administrative record. Tapper, 122 Wash.2d at 402, 858 P.2d 494.

2. DSHS is Not Required to Reimburse All Ordinary and Necessary Costs as Defined by the Facilities
Seatoma and KLR assert that the language in former WACs XXX-XX-XXX(1)[12] and XXX-XX-XXX(1)[13] mandate that DSHS "shall" reimburse all necessary and ordinary costs. However, where a statute is merely a guide "`for orderly procedure rather than a limitation of power, it will be construed as directory only.'" Niichel v. Lancaster, 97 Wash.2d 620, 624, 647 P.2d 1021 (1982)(quoting 1A C. Sands, Statutory Construction § 25.03, at 298-99 (4th ed.1972)).
In examining whether DSHS is required to adjust nursing services and administration and operations rates to levels that will reimburse allowable costs in full, the ALJ examines the entire statutory scheme. See Folden, 744 F.Supp. at 1535. The rates are set prospectively once per year, on July 1st, by adjusting the prior year's desk-reviewed cost report by the inflation adjustment set by the Legislature. Former RCW 74.46.460(1), (2), (4) (1989), Laws of 1987, ch. 476, § 3;[14] former RCW 74.46.495(2)(b)[15]. The prospective rates, with any adjustments, become the contractor's maximum reimbursement for allowable costs incurred during the rate period. See former RCW 74.46.430(1).
DSHS enacted former WAC 388-96-774 (1990), which incorporated the legislative rate setting requirements and expressly enumerated the limited number of bases for which DSHS may adjust rates.[16] The specific basis for a rate adjustment must be adopted by the *612 Legislature, and none has been adopted for general trends and conditions in the economy. The Seatoma ALJ noted that in spite of the "all" costs language in former RCW 74.46.481(1) and .500(1), RCW 74.46 "does not require reimbursement in full." See Cascade Vista, 61 Wash.App. at 637-39, 812 P.2d 104. The Seatoma ALJ also noted that "[a]pplication of the rules and legislative adjustments determines what is `necessary and ordinary.'" In addition, the Colby Manor ARJ pointed out that [DSHS] "is directed to pay the rate, not all allowable costs."
Based upon this application of the entire statutory and regulatory scheme, DSHS correctly determined the facilities' reimbursement rates. There is no specific definition of "necessary and ordinary costs" in either the statute or the WACs; however, it appears from the overall statutory scheme that the Legislature meant for the necessary and ordinary costs to be the prior period costs plus the inflation adjustment factor set by the Legislature. The statutory scheme creates no presumption that the "lidded" costs set the minimum level for compensation. Indeed, there is no a requirement for a minimum level. If a minimum payment level becomes necessary, the Legislature must set it.
C. Seatoma/KLR: Inflation Adjustment Challenge
Seatoma and KLR next contend that DSHS improperly applied the inflation adjustment factor by failing to adjust for the current economic trends and conditions. The facilities assert DSHS must either apply two separate inflation adjustments or adjust the legislatively set inflation adjustment factor for current economic conditions and trends. The facilities contend that the inflation adjustment factor is insufficient because the inflation adjustment factor figure set for the January to December 1989 period is applied to the July 1, 1990 rate, creating a six-month time lag.
Both the statute and the rules require that the inflation adjustment factor be set by the Legislature. Former RCW 74.46.420(2)[17] & 74.46.495;[18] former WAC 388-96-719(3) (1990).[19] Illustrative of the position in the administrative decisions, the Seatoma ARJ concluded:
Under [former] RCW 74.46.420(2), a specific basis for adjustment must be adopted through legislation and none has been permitted for general economic trends and conditions in addition to the inflation factor as set by the [L]egislature. Only the Legislature may authorize this adjustment and [DSHS] cannot add an additional adjustment to reflect economic trends.... [DSHS] has no authority to allow increases for any purposes greater than those specifically permitted by rule or statute, and the [ARJ's] authority ... is equally restricted. WAC 388-08-425(2).
....
*613 Further, while former RCW 74.46.420(2) requires an inflation adjustment factor to adjust the rates according to the prior twelve month historical costs, it does not require that the adjustment account for the six month lag between the cost year and the rate year. See Folden, 744 F.Supp. at 1519. Additionally, the adjustment for the six month "lag" will be included in the inflation adjustment factor applied the next rate year. When analyzed as a whole, "the effect of the lag is virtually eliminated over time." Folden, 744 F.Supp. at 1519. Thus, Folden determined that the inflation adjustment factor used by DSHS complied with the federal requirements.
DSHS is prohibited from altering the inflation adjustment factor applied to the facilities without legislative approval. Without that legislative approval, no additional amount should be added to the inflation adjustment factor for current trends to accommodate for the time lag between the cost year and the rate year. The trial court correctly upheld the ARJ's ruling denying Seatoma and KLR's request for alteration of the inflation adjustment factor.
D. Seatoma: Low Staffing Level Challenge
Seatoma contends that it had historically low staffing levels in 1989. Seatoma asserts that DSHS should have adjusted for its low 1989 staffing levels when setting the July 1, 1990 rate. Essentially, Seatoma is arguing that by using the prior year (1989) as the basis for the July 1, 1990 rate, it was being underfunded.
As previously noted, the methods of requesting a rate revision are set out in former WAC 388-96-774.[20] As discussed above, DSHS may not change rates to pay costs associated with economic trends and conditions beyond the legislatively approved adjustment, including for variations in staffing.
Seatoma should have requested a rate variation for increased staffing levels under former WAC 388-96-774. It did not. In both cases, the trial court correctly ruled that DSHS had no authority to adjust Seatoma's rates to account for low staff levels in the prior year.
E. Branch Villa/KLR: Nursing Services Cost Lid Challenge
DSHS appeals the superior court decisions reversing the ARJ. The superior court concluded that the ARJs' rulings and DSHS's application of the nursing services cost lids were errors of law; failed to address all of the issues that needed resolution; and were arbitrary and capricious, lacking a predictable pattern in violation of RCW 34.05.570(d), (f), (i). The superior court then ordered the agency to institute rulemaking proceedings to create a method to measure percentage cost increases.[21]
Substantial weight and deference should be given to an agency's interpretation of the statutes and regulations it administers. St. Francis, 115 Wash.2d at 695, 801 P.2d 212; Multicare Medical Ctr. v. Department of Social & Health Servs., 114 Wash.2d 572, 589, 790 P.2d 124 (1990)(additional citation omitted), superseded by statute on other grounds. The agency's interpretation should be upheld if it reflects a plausible construction of the language of the statute and is not contrary to the legislative intent. Sybrandy v. United States Dep't of Agric., 937 F.2d 443, 446 (9th Cir., 1991)(citing Rust v. Sullivan, 500 U.S. 173, 184, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991); Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984)). Interpretation of the statute and regulations regarding reimbursement rates is purely a question of law. St. Francis, 115 Wash.2d at 695, 801 P.2d 212.
Bearing this in mind, the issue is whether DSHS correctly applied the former *614 RCW 74.46.481[22] requirements regarding the nursing services cost area. This is a question of statutory construction and/or implementation and, thus, is a question of law which we review de novo. State v. Joswick, 71 Wash.App. 311, 315, 858 P.2d 280 (1993) (additional citation omitted).
Former RCW 74.46.481 establishes a system of qualified reimbursement, which begins with the determination of "all costs related to the direct provision of nursing and related care" (former RCW 74.46.481(1)), and then limits those costs by two cost lids (former RCW 74.46.481(3) and (5)). See Cascade Vista, 61 Wash.App. at 639, 812 P.2d 104 (the cost increase lid in former RCW 74.46.481(6) is the rule, as opposed to the "all costs" provision in former RCW 74.46.481(1)). The staffing and cost lids are the mechanisms used to ensure that only efficient and economically run facilities will be reimbursed. Crista, 77 Wash.App. at 408, 892 P.2d 749. The staffing lid "denies reimbursement for nursing staff levels in excess of the limit." Crista, 77 Wash.App. at 408, 892 P.2d 749 (citing former RCW 74.46.481(4)). The cost lid denies cost increases in excess of the selected index:
If the percentage cost increase for a facility exceeds the increase in the selected index, [DSHS] shall limit the cost used for setting the facility's rate in the nursing services cost area to a level reflecting the increase in the selected index.
Crista, 77 Wash.App. at 408, 892 P.2d 749 (quoting former RCW 74.46.481(6)(b) (1987)).
DSHS implemented this rule through former WAC 388-96-722. In practice, DSHS uses two methods for determining the cost increase lid, the per patient day rate and gross cost methods. The gross cost method compares the total allowable nursing services costs from the most recent year with those from the next prior year. If the cost increase exceeds the MC-CPI, the facility is limited to the costs equal the next prior year costs plus the MC-CPI figure. The per patient day rate method examines the cost of a "calendar day of patient care" by dividing the total patient days for the prior two years into the total nursing services costs for each of the respective prior years. See former WAC 388-96-010(53) (1990). If the per patient day rate is greater than the MC-CPI, the lid will be based upon the next prior year plus the MC-CPI. The per patient day rate removes factors related to the volume of patient days from the calculation. DSHS sets the cost increase lid at the per patient day rate or gross cost amount most favorable to the facility.
DSHS maintains that it correctly applied the statutory requirements through the WACs and its chosen methodology; and therefore, the additional methodology suggested by Branch Villa and KLR is not required.
Branch Villa and KLR counter that their hourly rate (1) removes quantity and quality of care from the lid calculation, (2) responds to the legislative directive that the lids only control inflation, (3) is more sensitive to an individual facility's circumstances, and (4) more closely reflects the considerations in the MC-CPI. As the Crista court points out, one consideration driving these appeals is that the facilities' patients were more debilitated during this period, and the hourly method excludes increased patient debility from the cost increase lid. Crista, 77 Wash. App. at 406, 892 P.2d 749.
Contrary to the facilities' assertion, the statute is designed to limit reimbursement of a facility whose costs rise more quickly than the selected index, regardless of the cause of the increase. Crista, 77 Wash. App. at 408, 892 P.2d 749. Additionally, the impact of sicker patients is addressed in several other parts of the statute (see former RCW 74.46.460(2); former 74.46.481(10)(a)) and the WACs (see former WAC 388-96-774 (providing the means by which a facility may pursue a rate revision)). Crista, 77 Wash. App. at 409, 892 P.2d 749. "The existence of sicker patients does not require DSHS to use an hourly method, in part because sicker patients are otherwise addressed by statute." Crista, 77 Wash.App. at 409, 892 P.2d 749.
The facilities also argue that DSHS's choice of methodology was arbitrary or capricious *615 because it (1) resulted in inconsistent treatment of the facilities, (2) failed to compare truly comparable costs, and (3) failed to promulgate rules regarding the methods chosen. As discussed above, DSHS's methodology is consistent with the statute. In addition, there is no dispute that DSHS applied these methods to all facilities in the state, adopting the result most favorable to each facility. The facilities do not challenge the two methods used by DSHS; they merely argue that the "hourly rate" method should also be considered. While other methods are possible, DSHS chose a reasonable methodology and has consistently applied it to facilities state-wide. This is not arbitrary or capricious. Crista, 77 Wash.App. at 410-11, 892 P.2d 749 (citing Barrie v. Kitsap County, 93 Wash.2d 843, 850, 613 P.2d 1148 (1980)).
Nothing in the statute requires DSHS to use an hourly method; therefore, there was no error of law. Additionally, DSHS's choice of methodology was not arbitrary or capricious. The superior court thus incorrectly ordered the adoption of an additional methodology.
The trial court's rulings on reimbursement of nursing services and administration and operations costs is affirmed. The trial court's ruling upholding DSHS's application of the inflation adjustment factors is also affirmed. Further, the trial court determination that DSHS lacked the authority to adjust for low staffing levels is affirmed. Finally, the trial court ruling requiring DSHS to adopt a new methodology on Code 25 issues is reversed, and the ARJ decision upholding DSHS's methodology is reinstated.
FLEISHER and HABERLY, JJ. Pro Tem., concur.
NOTES
[1] OF PARTIES
A. Seatoma
1. Seatoma Convalescent Center, Inc.
2. Colby Manor, Inc.
3. Moderncare West Seattle, Inc.
4. Pinecrest Manor Convalescent Home, Inc.
B. Branch Villa
1. Branch Villa Health Care Center, Inc.
2. Henry B. & Jean Folden, d/b/a Crestwood Convalescent Center
3. SGS Health Services, d/b/a Highlands Convalescent Center
4. Merry Haven Health Care Center, Inc.
5. Hall Family Partnership, d/b/a St. Francis Extended Health Care
6. Jerry & Toni Tretwold, d/b/a Harmony House Health Care Center
C. KLR
1. KLR Associates, Inc., d/b/a Bremerton Convalescent Center & Forest Ridge Convalescent Center
2. Cascade Vista Convalescent Center, Inc. & Evergreen Vista Convalescent Center, Inc.
3. The Hillhaven Corporation (20 Facilities: 13 involved in appeal)
4. Regency Care Centers, Inc. (12 Facilities)
5. Henry B. & Jean Folden, d/b/a Crestwood Convalescent Center
[2] DSHS asserts that the trial court ordered it to adopt the facilities' "hourly" method; however, DSHS was actually ordered to institute rulemaking proceedings to adopt some non-specified, additional methodology for measuring the nursing services cost lid.
[3] Former RCW 74.46.420 (1989), Laws of 1985, ch. 361, § 18, sets out the principles of rate setting, stating: "(1) Reimbursement rates will be set prospectively on a per patient day basis; and (2) The rates so established will be adjusted for economic conditions and trends in accordance with appropriations made by the legislature as consistent with federal requirements for the period to be covered by such rates." Unless otherwise noted, all RCW references are to the version in effect in 1989.
[4] Pursuant to former RCW 74.46.460(1)(1989), Laws of 1987, ch. 476, § 3, "[e]ach contractor's reimbursement rates will be determined prospectively at least once each calendar year, to be effective July 1st."
[5] The reimbursement rate is actually comprised of four cost centers (nursing services, food, administration and operations, property) and a return on investment component that is sometimes considered the fifth cost center. RCW 74.46.470(1), .530.
[6] See note 3, supra.
[7] In some of the cases, the ARJs made minor changes to the findings; however, those changes are not at issue in this appeal.
[8] Code 25 refers to the number for the nursing service cost increase lid on DSHS's list of adjustments.
[9] Essentially, the issue in Branch Villa's appeal is how to determine the lid required by former RCW 74.46.481 and former WAC 388-96-722(2)(b)(1990), setting the amount that will be reimbursed for nursing services cost increases. Unless otherwise noted, all references to the WACs relate to the 1990 version.
[10] See note 1, Index of Parties, supra.
[11] In the briefs, DSHS appears to assert that the facilities are also arguing that the agency has not decided all issues requiring agency resolution. RCW 34.05.570(3)(f). Nevertheless, the facilities' briefs have focused on the error of law and/or arbitrary or capricious standards.
[12] Pursuant to former WAC 388-96-722(1) (1990), "[DSHS] shall pay the nursing services cost area reimbursement rate for the necessary and ordinary costs of providing routine nursing and related care to recipients...."
[13] Pursuant to former WAC 388-96-735(1) (1990), "[t]he administration and operations cost area reimbursement rate will reimburse for the necessary and ordinary costs of overall management of the facility, operation and maintenance of the physical plant, and providing dietary service..., medical supplies, taxes, and insurance."
[14] Pursuant to former RCW 74.46.460:

(1) Each contractor's reimbursement rates will be determined prospectively at least once each calendar year, to be effective July 1st.
(2) Rates may be adjusted as determined by [DSHS] to take into account variations in the distribution of patient classifications or changes in patient characteristics from the prior reporting year, program changes required by [DSHS], or changes in staffing levels at a facility required by [DSHS]. Rates shall be adjusted by the amount of legislatively authorized enhancements in accordance with RCW 74.46.430(5) and 74.46.470(2)....
....
(4) All prospective reimbursement rates for 1984 and thereafter shall be determined utilizing the prior year's desk-reviewed cost reports.
[15] Pursuant to former RCW 74.46.495(2)(b), "[i]n the nursing services cost center rates beginning July 1, 1984, and the administration and operations cost center rate, the adjustments in subsection (1) of this section shall be applied to prior period annual costs in establishing July rates." Subsection (1) indicates that "adjustments for inflation mean percentages determined by the legislature in the biennial budget act." Former RCW 74.46.495(1).
[16] Pursuant to former WAC 388-96-774 (1990):

(1) [DSHS] shall determine each contractor's reimbursement rates prospectively at least once each calendar year, to be effective July 1st. [DSHS] shall determine all prospective reimbursement rates for 1984 and thereafter using the prior year's desk-reviewed cost reports. Prospective rates shall be the maximum payment rates for contractors for the periods to which they apply. [DSHS] may grant revisions for inflation only as authorized in WAC 388-96-719(3) and may grant other revisions for cost increases only as authorized in this section....
....
(3) [DSHS] may adjust rates for any of the following:
(a) Variations in the distribution of patient classifications or changes in patient characteristics from:
(i) The prior reporting year; or
(ii) Those used to set the rate for a new contractor; or
(iii) Corresponding to the nursing staff funded for a new contractor.
(b) Program changes required by [DSHS]; and
(c) Changes in staffing levels at a facility required by [DSHS].
....
[17] Former RCW 74.46.420 establishes the general principles of rate setting. See note 3, supra.
[18] See note 15, supra.
[19] Pursuant to former WAC 388-96-719(3) (1990):

[DSHS] shall apply inflation adjustments as follows:
(a) For July rate setting, a percentage adjustment determined by the legislature shall be applied to allowable costs in the nursing services and administration and operations cost areas if the cost report for a contractor covers all twelve months of the cost report period. If the cost report covers less than twelve months, [DSHS] shall reduce the inflation factor to reflect the shorter period.
....
[20] See note 16, supra.
[21] This issue was recently decided by Division I in Crista, 77 Wash.App. at 406-11, 892 P.2d 749. The Crista analysis is directly applicable to the appeals before this court.
[22] See discussion of former RCW 74.46.481, pp. 5-6, supra.