# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

WASHINGTON STATE HOSPITAL
ASSOCIATION,

Appellant,

v.

STATE OF WASHINGTON, SUSAN N.
DREYFUS, in her official capacity as
SECRETARY OF SOCIAL & HEALTH
SERVICES, DOUG PORTER, in his
official capacity as DIRECTOR OF THE
WASHINGTON STATE HEALTH CARE
AUTHORITY, and JAMES L. MCINTIRE,
in his official capacity of TREASURER
OF THE STATE OF WASHINGTON,

Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 69461-8-I

DIVISION ONE

PUBLISHED OPINION

FILED: July 29, 2013

GROSSE, J. – A legislature, here the 2010 legislature, cannot prevent a future legislature, here the 2011 legislature, from exercising its plenary power to enact laws, including the amendment or repeal of prior laws. And here, despite what might appear to have been legitimate expectations on the part of the Washington State Hospital Association (WSHA) to a continuing commitment to a funding scheme to maintain and increase state funds available for federal Medicaid matching money, that is all that occurred. The 2011 legislature changed the commitment made by the 2010 legislature. The trial court's summary dismissal of this action is affirmed.

## FACTS

Medicaid is a jointly funded federal and state medical assistance program. The federal government reimburses state governments for a portion of the costs

of providing medical assistance to low-income individuals.[1] Each state has authority to administer the program and devise its own reimbursement systems so long as those systems comply with certain federal guidelines.[2] In Washington, the federal government's financial support generally covers approximately 50 percent of the costs of Medicaid. The federal rate increased to 60.2 percent under the American Recovery and Reinvestment Act of 2009.[3]

Washington paid its share of Medicaid expenses primarily from monies appropriated from the state general fund. In 2009, the Washington legislature reduced its funding for hospital services under the state's Medicaid program.[4] Washington hospitals, working with the Washington State Department of Social and Health Services (DSHS), proposed a hospital safety net assessment to generate additional funding for the Medicaid program.[5] In 2010, the legislature enacted the hospital safety net assessment act (Act), codified as chapter 74.60 RCW.[6] The purpose of the Act was to generate additional funding to match federal funds to ensure payment at the 2009 reimbursement rate.

The original 2010 Act imposed an assessment on hospitals to generate the additional funds necessary to add to the state's appropriations from the general fund in order to maintain the 2009 pre-amendment hospital

---

[1] 42 U.S.C. § 1396 (a)-(e).

[2] Seatoma Convalescent Ctr. v. Dep't of Soc. & Health Servs., 82 Wn. App. 495, 501, 919 P.2d 602 (1996).

[3] Pub.L. No. 111-5, § 5002 (2009); 74 Fed. Reg. 18325, 18327 (Apr. 21, 2009).

[4] LAWS OF 2009, ch. 564, § 201 (effective July 1, 2009).

[5] In 2009, DSHS administered the state's Medicaid program. It is now administered by the state's Health Care Authority.

[6] H.B. 2956, 61st Leg., 1st Spec. Sess. (Wash. 2010); Chapter 74.60 RCW (LAWS OF 2010, 1st Spec. Sess., ch. 30, § 3).

reimbursement rates.[7]  Under this statutory scheme, participating hospitals pay an assessment on each non-Medicare hospital stay.[8]  Those assessments are placed in a dedicated fund called the hospital safety net assessment fund. Monies are dispersed from that fund in amounts sufficient to maintain the same level of Medicaid payments that were in effect before the 2009 reduction, and in specified amounts to certain hospitals.  These assessment funds were added to the reduced general fund appropriation in order to bring the state's spending up to the reimbursement amounts in existence before the 2009 reduction.  These funds were then matched by the federal program resulting in payments at least at the same level as 2009.

The Act further provided that the fund could only be dispersed as dictated by the Act and that if monies were otherwise dispersed or any part of the Act was declared invalid, the entire Act would become inoperative (the "poison pill" provision).  The Act expressly permitted a specific amount of the fund to be substituted for general fund appropriations in 2011 and 2012 to make up the reduction in funding from the state.[9]  The Act expired on July 1, 2013.

In 2011, the legislature amended the Act to provide that $199.8 million from the assessment fund was to be expended in lieu of the state's general fund payments to hospitals from July 1, 2011 through June 30, 2013.[10]  Monies from

---

[7] RCW 74.60.030.

[8] RCW 74.60.040 exempts state and federally owned hospitals, public hospitals that participate in certified public expenditure programs, hospitals that do not charge for hospital services, and long-term acute care hospitals.

[9] $49.3 million per biennium with an additional $17.5 million.

[10] H.B. 2069, 62nd Leg., 1st Spec. Sess. (Wash. 2011); RCW 74.60.020(3)(e) (LAWS OF 2011, 1st Spec. Sess., ch. 35, § 1).

the general fund would then be provided to assure payment at least at the same level as in 2009.

In response, WSHA sued the State and several state officers for declaratory relief and a writ of mandamus arguing that the State violated the constitution by diverting tax revenue for a purpose other than the reason given for its collection. Alternatively, WSHA argues that the amendment invalidated the Act under the "poison pill" provision. The State argues that the assessment was a fee not a tax and thus not a constitutional violation, and further that the legislature had the right to amend the statute. WSHA and the State filed cross motions for summary judgment. The trial court denied WSHA's motion and granted the State's motion, holding that the assessment was not a tax and that the poison pill provision was not triggered. WSHA appeals.

## ANALYSIS

WSHA argues that the safety net assessment is a tax subject to article VII, section 5 of the Washington State Constitution.[11] Accordingly, it contends that the legislature's amendment to the Act was unconstitutional because it would divert funds for purposes other than those contemplated by the original Act. In the alternative, WSHA argues that the 2011 amendment triggered the "poison pill" provision. Neither argument has any merit.

WSHA concedes that the legislature has the power to amend its statute, but argues that the amendment's diversion of the assessment funds (the additional $199.8 million) to the general fund is contrary to the purpose of the

---

[11]WASH. CONST. art. VII, § 5 provides:
> No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied.

original enactment, and thus renders the Act invalid. In other words, the assessment funds substituted for general funds were now not available to secure additional federal matching funds, the real purpose of the assessment in WSHA's view. But, in our view, the purpose of the Act was to maintain reimbursement rates at the same level as existed in 2009. The 2011 amendment accomplishes that purpose. The amendment does not reduce reimbursement rates below the pre-2009 rate reduction and the assessment funds generated matching federal funds as part of the general fund contribution to the Medicaid program. Therefore, whether or not the assessment is a tax or a fee is immaterial. The purpose of the Act was to maintain reimbursement costs at the 2009 level, which it continues to do.

WSHA's argument that the amendment triggered the "poison pill" provision is likewise without merit. RCW 74.60.150(1)(a),(b),(c), and (d) provides that the assessment, collection, and disbursement of funds is conditioned upon several occurrences, including the restoration of the four percent rate reduction, federal approval of any state plan changes necessitated by this Act, and certification from the office of financial management that sufficient appropriations support the reimbursement rates. The statute also provides that the assessment will cease to be imposed if

(1) an appellate court or federal reviewer determines that any element of this chapter cannot be implemented,
(2) reimbursement rates are reduced below the pre-2009 level, or
(3) "[t]he fund is used as a substitute for or to supplant other funds, except as authorized by RCW 74.60.020(3)(e)."[12]

---

[12] RCW 74.60.150(2)(e).

5

But the legislature amended RCW 74.60.020(3)(e) with the 2011 amendment. That section now provides specifically for the action taken, that $199.8 million could be substituted for general fund appropriation. This action was within the plenary power of the 2011 legislature. As stated in Washington State Farm Bureau Federation v. Gregoire:[13]

> It is a fundamental principle of our system of government that the legislature has plenary power to enact laws, except as limited by our state and federal constitutions. Each duly elected legislature is fully vested with this plenary power. No legislature can enact a statute that prevents a future legislature from exercising its law-making power. That which a prior legislature has enacted, the current legislature can amend or repeal. Like all previous legislatures, it is limited only by the constitutions. To reason otherwise would elevate enactments of prior legislatures to constitutional status and reduce the current legislature to a second-class representative of the people.

While it may be true that the hospitals anticipated that any remaining funds could be used in the future as matching federal funds or be returned to the hospitals, this was not a vested right, nor the stated purpose of the legislature[14]

We affirm the summary judgment dismissal of the action.

WE CONCUR:

_____
Spearman, A.C.J.

_____
Appelwick, J.

---

[13] 162 Wn.2d 284, 290, 174 P.3d 1142 (2007) (footnotes omitted).
[14] RCW 74.60.150(2) provides that if the Act ceases to be implemented, the remaining funds are returned to the hospitals in proportion to their contributions.